IN RE HAWKINS

[120 N.C. App. 585 (1995)]

———————

IN RE: ANGELA HAWKINS, A MINOR CHILD

No. COA94-1169

(Filed 7 November 1995)

**1. Appeal and Error § 205 (NCI4th)— failure to give timely notice of appeal**

Since entry of judgment occurred on 31 August 1994, the date the written judgment was filed, and no notice of appeal was taken within ten days after that date, by respondent's failure to either give proper oral notice of appeal or timely written notice of appeal, the Court of Appeals did not acquire jurisdiction and the appeal must be dismissed.

**Am Jur 2d, Appellate Review § 291.**

**2. Infants or Minors § 120 (NCI4th)— abused and neglected child—sufficiency of evidence**

The evidence was sufficient to support the trial court's conclusion that a minor was abused and neglected where it tended to show that respondent admitted that she was afraid she would hurt her baby and did not want her child, and a pediatric expert testified that injuries sustained by the child more than likely did not occur in the manner described by the mother.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 45, 104, 105.**

On writ of certiorari to review order filed 31 August 1994 by Judge Russell G. Sherrill, III in Wake County District Court. Heard in the Court of Appeals 23 August 1995.

The following evidence was received at a hearing on a petition alleging abuse, neglect, and dependency of a minor child (hereinafter "the petition"). On 4 March 1994, respondent, Mary Crudup, contacted Myra Norwood, a Wake County Department of Social Services (hereinafter "DSS") employee, regarding placing her nineteen-day-old daughter for adoption. Respondent also had a one-year-old daughter living with her. Respondent told Norwood that she had no feelings for her infant baby, that she hit the baby to quiet her, and that the baby made her do "bad things."

Norwood referred the matter to Anthony Horton, an intake services employee with DSS. Respondent told Horton that she was afraid she was going to hurt the baby because of her bad nerves, and she wanted DSS to take the baby from her. Horton formulated a protective plan in which the baby would remain in respondent's home with the maternal grandmother assuming responsibility for the baby.

On the morning of 7 March 1994, respondent's infant daughter was admitted to Wake Medical Hospital for a second degree burn along her left forearm. Respondent stated that while she was in the kitchen her one-year-old child jumped onto a floor pallet upon which the infant was lying, thereby causing the infant to roll into a space heater. Dr. Jeffrey Tanaka, an expert in the field of pediatric medicine, testified that a twenty-two-day-old was not capable of rolling because of little tone. Furthermore, the child's neurological history revealed defects that contributed to developmental delay, which would further retard the child's ability to roll. Dr. Tanaka opined that the history was not consistent with the type of injury the infant sustained.

After the infant's hospitalization, respondent told Kelvin Crenshaw, another DSS employee, that she did not want the infant child. She also told Lee Cooley of the permanency planning unit of DSS that she wanted the baby's paternal aunt to take care of the infant until she was five or six years old, and that she could not handle the baby because she wanted to be "footloose and fancy-free."

Susan Steele, a child service coordinator for the Department of Health, testified that respondent had used cocaine four times during her pregnancy, and that respondent evidenced no bonding between herself and the infant. Respondent told Steele that her one-year-old daughter picked up the baby and dropped her on the space heater. She asked Steele if she should have beaten her older daughter.

**IN RE HAWKINS**

[120 N.C. App. 585 (1995)]

Following a hearing on the petition, the trial court adjudicated the infant as abused, neglected, and dependent and ordered, *inter alia*, that the minor remain in the legal custody of DSS with placement authority in that agency. Respondent appeals.

*Anne W. Brill for petitioner appellee.*

*Kelly & Kelly, by Frederick D. Kelly, for respondent appellant.*

*Lou A. Newman for Guardian Ad Litem appellee.*

ARNOLD, Chief Judge.

**[1]** We initially note that upon review of the record, respondent has failed to give proper notice of appeal, thus subjecting her appeal to dismissal under Rule 3(b)(2) of the North Carolina Rules of Appellate Procedure and N.C. Gen. Stat. § 7A-666. N.C. Gen. Stat. § 7A-666, which governs the right to appeal juvenile matters, states in part

> Upon motion of a proper party as defined in G.S. 7A-667, review of any final order of the court in a juvenile matter under this Article shall be before the Court of Appeals. Notice of appeal shall be given in open court at the time of the hearing or in writing within 10 days after entry of the order.

N.C. Gen. Stat. § 7A-666 (1989).

Respondent gave notice of appeal in open court at the time of the hearing on 10 May 1994. However, when the second sentence of N.C. Gen. Stat. § 7A-666 permitting oral notice of appeal at the hearing is read in conjunction with the first sentence providing for appellate review only upon any "final order," it appears that oral notice of appeal given at the time of the hearing must be from a final order. Here, the court had not rendered a final order at the time of the hearing because it had not ruled on all matters raised in the petition. Rather, the court stated at the hearing only that it found "that there is evidence that the child is abused and neglected," and made no reference to the dependency allegation raised in the petition. Therefore, respondent's oral notice of appeal was premature.

Respondent also gave written notice of appeal on 18 May 1994, but she failed to give it within ten days after "entry" of the final order. In this case, entry of judgment is determined under Rule 58 of the North Carolina Rules of Civil Procedure and the case law interpreting the rule. Rule 58 provides

**IN RE HAWKINS**

[120 N.C. App. 585 (1995)]

Subject to the provisions of Rule 54(b): Upon a jury verdict that a party shall recover only a sum certain or costs or that all relief shall be denied or upon a decision by the judge in open court to like effect, the clerk, in the absence of any contrary direction by the judge, shall make a notation in his minutes of such verdict or decision and such notation shall constitute the entry of judgment for the purposes of these rules. The clerk shall forthwith prepare, sign, and file the judgment without awaiting any direction by the judge.

In other cases where the judgment is rendered in open court, the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment for the purposes of these rules. The judge shall approve the form of the judgment and direct its prompt preparation and filing.

In cases where judgment is not rendered in open court, entry of judgment for the purposes of these rules shall be deemed complete when an order for the entry of judgment is received by the clerk from the judge, the judgment is filed and the clerk mails notice of its filing to all parties. The clerk's notation on the judgment of the time of mailing shall be prima facie evidence of mailing and the time thereof.

N.C. Gen. Stat. § 1A-1, Rule 58 (1990).

This case does not fall under the first paragraph of Rule 58 because the action was tried by a judge without a jury. Neither does it fall within paragraph two because, as stated above, no judgment was "rendered" in open court since the trial judge's oral announcement was not issued in the form of a final order subject to appellate review. *See Stachlowski v. Stach,* 328 N.C. 276, 401 S.E.2d 638 (1991) (holding that under Rule 58 there can be no valid entry of judgment absent necessary findings made pursuant to Rule 52). Nor do the facts of the instant case fall under paragraph three because "[t]he third paragraph of Rule 58 . . . applies to instances where the trial judge directs the clerk to prepare and file judgment. It is inapplicable when the trial judge prepares and signs the judgment." *Barringer & Gaither, Inc. v. Whittenton,* 22 N.C. App. 316, 317, 206 S.E.2d 301, 302 (1974). Nothing in the record indicates that the trial judge directed the clerk or anyone else to prepare and file the judgment, although a written judgment was filed 31 August 1994.

**IN RE HAWKINS**

[120 N.C. App. 585 (1995)]

Therefore, when the circumstances are such that the trial court's procedures do not fit within the express provisions of Rule 58, we must look to the factors set forth in *Stachlowksi v. Stach*, 328 N.C. 276, 401 S.E.2d 638, to determine when entry of judgment took place for purposes of our review. *In re Hayes*, 106 N.C. App. 652, 418 S.E.2d 304 (1992). The relevant factors are: (1) an easily identifiable point at which entry of judgment occurred, so that (2) the parties have fair notice of the judgment, and (3) the matters for adjudication have been finally and completely resolved so that the case is appropriate for appellate review. *Stachlowski*, 328 N.C. 276, 401 S.E.2d 638.

First, the trial court's announcement in open court with findings yet to be made and disposition yet to be determined is not clearly identifiable as the time of entry of judgment. The court merely stated that the evidence supported findings of abuse and neglect and did not direct the clerk to enter judgment. On the other hand, the date of filing the judgment provided an easily identifiable point at which entry occurred. *See Reed v. Abrahamson*, 331 N.C. 249, 415 S.E.2d 549 (1992); *In re Hayes*, 106 N.C. App. 652, 418 S.E.2d 304. Furthermore, the trial court's announcement in open court was not yet final as to be suitable for appellate review. The findings of fact and conclusions of law were not set forth in final form, *see Hayes*, 106 N.C. App. 652, 418 S.E.2d 304; *Cobb v. Rocky Mount Board of Education*, 102 N.C. App. 681, 403 S.E.2d 538 (1991), *aff'd*, 331 N.C. 280, 415 S.E.2d 554 (1992), and the court did not rule on dependency until the written judgment was filed. Finally, it is evident from the record that the parties only had fair notice of the judgment at the time the written judgment was filed on 31 August 1994 because only after that date did the parties take action to settle the record on appeal. Therefore, we hold entry of judgment did not occur until 31 August 1994.

In sum, since entry of judgment occurred on 31 August 1994, and no notice of appeal was taken within ten days after that date, by respondent's failure to either give proper oral notice of appeal or timely written notice of appeal, this Court has not acquired jurisdiction and the appeal must be dismissed. *See Brooks, Com'r of Labor v. Gooden*, 69 N.C. App. 701, 318 S.E.2d 348 (1984). However, under our general supervisory powers pursuant to Rules 2 and 21 of the Rules of Appellate Procedure and N.C. Gen. Stat. § 7A-32(c) (1989), we treat respondent's appeal as a petition for writ of certiorari which is allowed.

Respondent contends that the trial court erred in failing to make findings of fact and conclusions of law to support its order where the

**IN RE HAWKINS**

[120 N.C. App. 585 (1995)]

action was tried upon the facts without a jury. Respondent bases her argument on the trial court's oral announcement at the 10 May 1994 hearing, at which the court did not make findings of fact and conclusions of law as required under N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (1990). The court, however, was not required to make oral findings and conclusions regarding adjudication. *See* N.C. Gen. Stat. § 7A-637 (1989). Furthermore, we have determined, for purposes of appellate review, that the 31 August 1994 written order, which contains the trial court's findings of fact and conclusions of law, controls. This written order satisfies the requirements of Rule 52, thus respondent's argument is without merit.

[2] Respondent's second assignment of error is that the court's findings of abuse and neglect were not supported by the evidence. Specifically, she contends that there was no clear and convincing evidence to support a finding that respondent created a substantial risk of physical injury to the minor by other than accidental means. She maintains that there was no testimony on the causation of the child's injury. We disagree. To the contrary, the pediatric expert testified that based on respondent's explanation of the causation of the injury, and the infant's medical history, her history was not consistent with the type of injuries she sustained. Furthermore, her age and neurological defects made it "highly unlikely that the child was harmed in the way described by the mother." The doctor's testimony, along with the testimony of several DSS witnesses concerning respondent's admission that she was afraid she would hurt her baby, and did not want her child, were clear and convincing evidence to support the court's conclusion that the minor was abused and neglected. The written order of the trial court is

Affirmed.

Judges JOHNSON and MARTIN, Mark D., concur.