696 S.E.2d 898 (2010)
In the Matter of R.N.
No. COA09-1406.
Court of Appeals of North Carolina.
August 17, 2010.
*899 Attorney General Roy Cooper, by Assistant Attorney General Catherine F. Jordan, for the State.
Kimberly P. Hoppin, Chapel Hill, for juvenile-appellant.
*900 HUNTER, Robert C., Judge.
Juvenile R.N. ("Richard") appeals from the trial court's orders adjudicating him delinquent and ordering a Level 2 disposition.[1] The juvenile petition in this case alleged that Richard committed two distinct acts constituting a crime against nature: licking the alleged victim's genital area and placing his penis in her mouth. Richard's sole argument on appeal is that the trial court should have dismissed the juvenile petition for insufficient evidence that penetration  the essential element of a crime against nature  occurred during either alleged incident. We agree with Richard's contention with respect to the first alleged act and, therefore, reverse that portion of his adjudication. With respect to the second incident, defects in the transcript make meaningful appellate review of the sufficiency of the evidence impossible. Accordingly, we remand the case to the trial court to reconstruct the relevant portion of the testimonial evidence.

Facts
The State's evidence tended to establish the following facts at the adjudication hearing: In August 2008, Richard, who was 12 at the time, was living with his mother, his two siblings, his aunt and her three children, and his grandparents in a mobile home in Guilford County, North Carolina. Sometime in August 2008, Richard called his cousin "Dana" (seven) into the bedroom he shared with his brother "James" (nine) and his cousin "Sam" (13). Richard was on the top bunk of the bunk bed and Dana got onto the top bunk with him. Also in the room were James, on the bottom bunk, and Sam, on his bed next to the bunk beds. The lights were off, James was playing video games, and Sam was reading a book with a flashlight. While Richard and Dana were on the top bunk, Richard pulled down Dana's pants, pushed her head into the wall, and "licked" her genital area. Richard, with his pants "half-way down," also forced Dana's head down to his "private area." Dana told Richard to stop and then left the bedroom.
After leaving the bedroom, Dana told her mother that Richard had "put his mouth on her private area." Dana then told her grandmother that Richard "touch[ed] [her] on her private parts." On 4 September 2008, Nydia Rolon, with Family Services of the Piedmont, Child Advocacy Center, interviewed Dana. Dana told Ms. Rolon that when she got into bed with Richard, he pulled the covers over her head, pulled down her pants and "started licking her private area." Dana also told Ms. Rolon that Richard pushed her head down into his "private area" and that she could see his "private area." Dana was also interviewed by Lasonya Tuttle, a social worker with the Guilford County Child Protective Services ("CPS"). Dana told Ms. Tuttle that Richard "licked her private" and that he "put her head in his private area."
The State filed two juvenile delinquency petitions, alleging that Richard had committed a crime against nature and misdemeanor sexual battery. The trial court held an adjudication hearing on 16 January 2009 on the delinquency petitions. At the close of the State's evidence, Richard moved to dismiss both charges for insufficient evidence. The court dismissed the sexual battery charge but denied the motion with respect to the charge of crime against nature. At the conclusion of all the evidence, Richard renewed his motion to dismiss and the court again denied the motion. The court subsequently entered an adjudication order on 19 March 2009 finding Richard delinquent. After conducting a disposition hearing, the court entered an order on 14 April 2009 imposing a Level 2 disposition. Richard timely appealed to this Court.

Discussion
In his sole argument on appeal, Richard contends that the trial court erred in denying his motion to dismiss the crime against nature charge for insufficient evidence. In the same manner as adult defendants, "juveniles `may challenge the sufficiency of the evidence by moving to dismiss the juvenile petition.'" In re Heil, 145 N.C.App. *901 24, 28, 550 S.E.2d 815, 819 (2001) (quoting In re Davis, 126 N.C.App. 64, 65-66, 483 S.E.2d 440, 441 (1997)). The juvenile's motion to dismiss should be denied "[i]f there is substantial evidencewhether direct, circumstantial, or bothto support a finding that the offense charged has been committed and that the [juvenile] committed it. . . ." State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). Substantial evidence is that amount of relevant evidence sufficient to persuade a rational juror to accept a particular conclusion. State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact that may be drawn from the evidence. In re Bass, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).
"When the evidence raises no more than `a suspicion or conjecture as to either the commission of the offense or the identity of the [juvenile] as the perpetrator of it, the motion should be allowed.'" Heil, 145 N.C. App. at 28, 550 S.E.2d at 819 (quoting Powell, 299 N.C. at 98, 261 S.E.2d at 117). The existence of only circumstantial evidence, however, does not warrant dismissal. State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 919 (1993). When the evidence is circumstantial, "the court must consider whether a reasonable inference of [the juvenile]'s guilt may be drawn from the circumstances." Id. If so, "it is then within the court's factfinding function to determine `whether the facts, taken singly or in combination, satisfy [the court] beyond a reasonable doubt' that the juvenile is delinquent." Heil, 145 N.C.App. at 29, 550 S.E.2d at 819 (quoting State v. Rowland, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)).
The juvenile petition in this case alleged that Richard was a delinquent juvenile for having committed a "crime against nature" in violation of N.C. Gen.Stat. § 14-177 (2009). The offense of "crime against nature is sexual intercourse contrary to the order of nature." State v. Harward, 264 N.C. 746, 746, 142 S.E.2d 691, 692 (1965). The essential element of the offense "is `some penetration, however slight, of a natural orifice of the body.'" Heil, 145 N.C.App. at 29, 550 S.E.2d at 819-20 (quoting State v. Whittemore, 255 N.C. 583, 585, 122 S.E.2d 396, 398 (1961)) (emphasis omitted); accord State v. Joyner, 295 N.C. 55, 66, 243 S.E.2d 367, 374 (1978) (holding that "penetration by or of a sexual organ is an essential element" of crime against nature). The requisite penetration, however, "is not limited to penetration by the male sexual organ." Joyner, 295 N.C. at 66, 243 S.E.2d at 374. N.C. Gen.Stat. § 14-177 is "broad enough to include all forms of oral and anal sex" involving penetration. State v. Stiller, 162 N.C.App. 138, 140, 590 S.E.2d 305, 307, appeal dismissed and disc. review denied, 358 N.C. 240, 596 S.E.2d 19 (2004).
The juvenile petition in this case alleged that Richard committed two distinct acts constituting a crime against nature: (1) "licking the gentials [sic] area of the victim, . . . while she was fully clothed" and (2) "placing his penis in her mouth. . . ." Richard challenges the sufficiency of the evidence with respect to both acts.
As for the first act, Richard contends that even if there is evidence that he licked Dana's genital area "while she was fully clothed," such an act does not constitute a crime against nature because her being fully clothed necessarily prevented "any act of penetration by or of a sexual organ." While we do not agree with Richard's categorical assertion that penetration of the female genitalia can never occur when the victim is fully clothed, we do agree that the evidence in this case is insufficient to sustain Richard's adjudication based on the first act alleged in the petition.
In Whittemore, 255 N.C. at 585, 122 S.E.2d at 397, the defendant was convicted of committing a crime against nature. On appeal, the defendant arguedas Richard does herethat the trial court erred in denying his motion to dismiss for insufficient evidence of penetration. The Supreme Court summarized the evidence with respect to penetration as follows:

*902 "[The alleged victim] testified that [defendant] invited her into an uninhabited house. `He then told me to pull off my pants. . . . I pulled my pants below my knees. After I pulled my panties down below my knees, he put his privates against mine. He was laying on his back and made me lay down on him. I stayed inside the house about two or three minutes before he told me to pull my panties down. After he went in the house, he pulled his trousers off of one leg and laid down flat on his back on the floor. He made me put my hands on his privates and he put his hand on my privates. He kept it there about two or three minutes; he just left it there. After he had done that for two or three minutes, he put his mouth on my breast and after that he put it on my privates and kept his mouth there about one or two minutes. He just left it there. . . . He had his privates at my privates rubbing it up and down. I said at. He did that about one or two minutes. . . .'"
Id. at 586, 122 S.E.2d at 398 (emphasis added). The Supreme Court concluded that this "evidence [wa]s insufficient to establish the `penetration' necessary for a conviction" under N.C. Gen.Stat. § 14-277 and thus the defendant's motion to dismiss "should have been allowed." Whittemore, 255 N.C. at 586, 122 S.E.2d at 398.
Here, Dana testified at trial that Richard "licked [her] private. . . ." In addition to Dana's testimony, Dana's mother testified that Richard "put his mouth on [Dana's] private area," and Dana's grandmother testified that Richard "touch[ed] [Dana] on her private parts." Ms. Rolan, with the Child Advocacy Center, also testified about her interview with Dana, stating that Dana told her that Richard "pulled down her pants and started licking her private area." Similarly, Ms. Tuttle, a CPS social worker, testified that Dana told her during their interview that Richard had "licked her private."
This testimony is indistinguishable from the evidence in Whittemore. Although the defendant in Whittemore placed his hand, his mouth, and his "privates" "on," "at," or "against" the alleged victim's "privates," thus establishing physical contact, there was no evidence indicating that defendant penetrated the alleged victim's genitalia. So too, here, even when viewing the evidence in the light most favorable to the State, the evidence merely shows that Richard "licked [Dana's] private"; that he "put his mouth on [Dana's] private area"; or, that he "touch[ed] her on her private parts." (Emphasis added.)
As our Supreme Court has held, cunnilingus, which is defined as the "stimulation by the tongue or lips of any part of a woman's genitalia[,]" may occur without penetration of the female genitalia. State v. Ludlum, 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981). Thus, the evidence tending to show that Richard "licked" Dana's "private area" does not, without more, support a reasonable inference that penetration occurred. Whittemore, 255 N.C. at 586, 122 S.E.2d at 398. The trial court, therefore, erred in denying Richard's motion to dismiss the charge of crime against nature based on the allegation that he "lick[ed] the gentials [sic] area of the victim. . . ."
Richard also contends that there is insufficient evidence that he "plac[ed] his penis in [Dana's] mouth," the second act alleged in the juvenile petition as constituting a crime against nature. At trial, Dana's testimony did not include anything about Richard placing his penis in her mouth. After testifying about Richard licking her "private," Dana was asked twice whether Richard "d[id] anything else to [her]," and each time she said "No." Neither Dana's mother nor grandmotherwho both testified that Richard "licked" Dana's "privates"testified about whether Richard placed his penis in Dana's mouth.
As both Richard and the State point out, the only evidence bearing on whether Richard placed his penis in Dana's mouth is the testimony of Ms. Rolon and Ms. Tuttle. Ms. Rolon testified that Dana told her during their interview that "[Richard] forced her head down to his private" and that "she had seen his private area when he forced her head down to his private area." Ms. Tuttle also testified about her interview with Dana:

*903 When I first talked with, um, [Dana], ah, she's the first child I interviewed; she told me that um, [Richard] had put his, put her head down his private area and put his hands around her neck. And I asked her if there was penetration and she told me there was (Indistinct Muttering) penetration.[2]
(Emphasis added.)
To the extent that both Ms. Rolon and Ms. Tuttle testified that Richard forced Dana's head down to his "private area" and that Dana saw his "private area," this testimony is insufficient under Whittemore. Even when viewing the evidence in the light most favorable to the State and resolving all conflicts in the evidence in its favor, evidence indicating that Richard forced Dana's head down to his "private area" and that Dana saw his "private area" does not support a reasonable inference that Richard put his penis in Dana's mouth. See Whittemore, 255 N.C. at 586, 122 S.E.2d at 398 (holding that witness's testimony that defendant "put [his mouth] on my privates" was insufficient to support inference that penetration occurred).
Ms. Tuttle further testified, however, that she asked Dana directly whether "there was penetration" when Richard forced her head down to his "private area." Although Ms. Tuttle indicated that Dana answered the question, her response is not fully transcribed. The transcript reads: "And I asked her if there was penetration and she told me there was (Indistinct Muttering) penetration." As Richard points out, due to the parenthetical statement inserted by the transcriber"(Indistinct Muttering)"it is impossible to determine the import of Ms. Tuttle's testimony.[3] She could have said that "there was [no] penetration." On the other hand, she could have said that "there was [some] penetration." In short, however, the transcript is unclear as to Ms. Tuttle's testimony regarding whether there wasor was notpenetration.
Richard argues on appeal that because it is not possible to determine, based on the record before us, what Ms. Tuttle said at trial, there is insufficient evidence to support his adjudication and his delinquency adjudication must be reversed. Richard's contention ignores his responsibility as the appellant to ensure that any reporting errors in the transcript are corrected in order to provide for meaningful appellate review. See State v. Fox, 277 N.C. 1, 28, 175 S.E.2d 561, 578 (1970) ("[T]he primary duty of preparing and docketing a true and adequate transcript of the record and case on appeal in a criminal case rests upon defense counsel. . . ."). As our Supreme Court has cautioned, "[d]efense counsel and the district attorney, as officers of the court, have an equal duty to see that reporting errors in the transcript are corrected. This duty does not, however, embrace the right to perpetuate and then take advantage of transcript mistakes." State v. Robinson, 327 N.C. 346, 360, 395 S.E.2d 402, 410 (1990) (internal citation omitted) (emphasis added).
Once Richard discovered the error in the transcript, it was his duty to correct it by requesting a hearing to reconstruct the substance of Ms. Tuttle's testimony. See State v. Lawrence, 352 N.C. 1, 16, 530 S.E.2d 807, 817 (2000) (approving trial court's holding a hearing to reconstruct missing testimony where State drafted narrative of witnesses' testimony, witnesses testified that narrative accurately reflected their trial testimony, and court reporter reviewed her notes regarding objections and cross-examination), cert. denied, 531 U.S. 1083, 121 S.Ct. 789, 148 L.Ed.2d 684 (2001). Consistent with Rule 9(c)(1) of the Rules of Appellate Procedure, the parties should have prepared a narrative of Ms. Tuttle's testimony. We note that this process would have been relatively simple in this case as the record indicates that Ms. Tuttle's testimony was primarilyif not exclusivelybased on her written report from her interview with Dana.
*904 Because we cannot determine from Ms. Tuttle's testimony whether penetration occurred, we cannot meaningfully review the sufficiency of the evidence to withstand Richard's motion to dismiss. Consequently, we vacate Richard's adjudication and remand this case to the trial court to conduct a hearing to reconstruct the pertinent portion of Ms. Tuttle's testimony. On remand, the parties may stipulate to the narrative, or, if the parties cannot agree, the trial court may settle the record. See State v. Wray, 35 N.C.App. 682, 690, 242 S.E.2d 635, 639 (explaining that where the parties cannot agree that transcript is "absolutely correct," the trial court may settle record), appeal dismissed and disc. review denied, 295 N.C. 263, 245 S.E.2d 780 (1978). See also State v. DeLeon, 127 Wis.2d 74, 79, 377 N.W.2d 635, 638 (Wis.Ct.App.1985) (holding that under federal rule where transcript is defective, "the parties should first attempt to prepare an agreed statement of the record on appeal. . . . Then, if any dispute remains as to what occurred, the difference shall be submitted to and settled by the trial court.").
Reversed in part; vacated and remanded in part.
Judges GEER and STEPHENS concur.
NOTES
[1] Pseudonyms are used throughout this opinion to protect the minors' privacy and for ease of reading.
[2] We note that the State, in its brief, inappropriately replaces the italicized portion of Ms. Tuttle's testimony with an ellipsis and asserts that Ms. Tuttle "testified that the victim told her that penetration occurred."
[3] According to the stenographer's "[d]isclaimer," the microphone at the witness stand was not working properly and thus "[a]ll witnesses [we]re extremely difficult to hear and understand."