ZACHARY, Judge.
Juvenile D.K. ("Drew")[1] appeals from the trial court's orders adjudicating him delinquent and entering disposition. The juvenile petition in this case alleged that Drew committed a crime against nature by instructing the alleged victim to pull her pants down and licking her anus and vagina. On appeal, Drew argues that (1) the trial court erred by denying his motion to dismiss the petition for crime against nature because the State failed to prove the element of penetration; (2) the trial court committed plain error by admitting and then relying on non-corroborative hearsay to adjudicate him delinquent; (3) the trial court erred by adjudicating him delinquent for commission of a crime against nature without finding beyond a reasonable doubt that he committed the offense or making findings of fact supporting the conclusion that he committed the offense; and (4) the trial court erred by entering disposition without making any supporting findings of fact, by delegating its authority to the court counselor, and by imposing dispositional alternatives that were inconsistent with the State's own reports.
Background
The State's evidence tended to establish the following facts at the adjudication hearing: On 8 October 2016, Drew was at Michelle's house in Jacksonville, North Carolina. Drew, who was eight-years-old at the time, and Michelle, who was seven-years-old at the time, had met and become friends several weeks earlier while their families were staying at a women's shelter. Michelle's mother testified that she had instructed her 12-year-old son, who has mild autism, to watch Drew and Michelle while she ran some errands with Drew's sister.
At the adjudication hearing, Michelle testified that, while she was watching a television show on her tablet, Drew came into the room and slapped her bottom, which she called her "boom-boom." She told Drew to stop, but he slapped her bottom again. Michelle again told Drew to stop, and he stopped. Michelle testified that, after she got back on her tablet, "[Drew] started wanting to play with [her][,]" meaning that he wanted to play with her genital area, which she called her "Nukas area." Michelle testified that Drew touched her "Nukas area" with his tongue and his finger. She further testified that she had her clothes on when Drew touched her:
Q. And were you wearing clothes, [Michelle]?
A. Yes.
Q. And did he keep your, did you keep your clothes on or did you have your clothes off when he touched you?
A. On.
Q. Okay. And was there a time when he tried to take your clothes off?
A. Yes.
Q. Okay. And did he take your pants off?
A. No.
Q. Okay, did you take your pants off?
A. No.
On cross-examination, Michelle responded "Yes[ ]" when defense counsel asked "And if I heard your testimony correctly, your, your pants were never removed? You said no to that right?"
Sarah Ellis, a forensic interviewer for the Child Advocacy Center of Onslow County, also testified. Ms. Ellis conducted a forensic interview with Michelle on 18 October 2016 after the Department of Social Services became involved. Ms. Ellis testified that Michelle provided her with the following account:
[Michelle] said that she was in her room laying on her bed, playing with her tablet, watching Pucca and she actually demonstrated how she was laying on her bed. And that [Drew] came up to her and he smacked her on her butt which was something she continuously said throughout the interview. She then said that ... [Drew] pulled down her pants which she actually got up out of her chair and demonstrated that to me and she said that [Drew] helped her do that. ..., and that [Drew] had licked her, what she identified as her Nukas which she later showed me on an anatomical drawing as being her genital area and she also pointed at her genital area during the interview.
Ms. Ellis testified that Michelle "talked about [Drew] licking her Nukas and her Boom-Boom" and that Michelle "demonstrated that for [Ms. Ellis] by sticking her tongue out of her mouth and moving her head ... in an up and down motion." Ms. Ellis also testified that Michelle "had some difficulty with specific details ... during the interview[,]" which was common with seven-year-olds. In Ms. Ellis's evaluation summary, she checked the boxes labeled "oral contact" and "other," but did not check the boxes labelled "fondling," "vaginal penetration," "pornography," or "anal penetration."
Michelle's mother testified that, the next morning, Michelle complained that her private area "was hurting really bad[.]" Michelle's mother then checked Michelle's private area and noticed some "irritation" or a "sort of crusty little scabby area[.]" According to Michelle's mother, Michelle then related what happened as follows:
[Michelle] was in her brother's room and ... she was on a tablet and [Drew] was on his tablet and they were play-they were doing whatever they do on their tablet and [Drew] walked over and smacked her on the butt. ... [H]e smacked her on the butt a couple of times and then he told her to pull her pants down and then he licked and he touched her vaginal, vagina area as well as her ... butt area. ... [H]e did that a few times, ... and smacked her butt again. She told him to stop. He wouldn't stop and then ... not very much longer I came back.
Michelle's mother further testified that, after learning about this incident, she contacted Drew's mother. Drew's mother was very upset and she called Drew to the phone. "He immediately started screaming and denying and saying it didn't happen." Drew's mother then told her that she was "going to call the authorities and ... get the authorities involved."
Detective Amanda Smith of the Jacksonville Police Department became involved in investigating the case upon referral from the Department of Social Services. She observed Michelle's interview with Ms. Ellis and took notes. After the interview, Detective Smith attempted to contact Drew's mother by calling her phone number twice and leaving a voicemail. When Drew's mother did not return her call, Detective Smith sent Drew's mother a letter on 27 October 2016.
The State filed a petition against Drew for crime against nature on 6 December 2016. Subsequently, on 2 February 2017, the State filed a petition against Drew for sexual battery. The petitions were heard before the Honorable Carol A. Jones on 4 May 2017. At the close of the State's evidence, defense counsel made a motion to dismiss both petitions. In arguing that the petition for crime against nature should be dismissed, defense counsel argued that the State had failed to prove the essential element of penetration. The trial court denied the motions and adjudicated Drew delinquent for both offenses. Defense counsel then gave notice of appeal. On its own motion, the trial court entered an order to set aside and vacate the adjudication of delinquent for sexual battery on 6 June 2017.
The remaining adjudication came on for disposition before the Honorable Michael C. Surles on 15 June 2017. At the hearing, the court counselor recommended "the standard Level 1 Probation conditions for a period of 12 months[ ]" and that Drew and his mother "cooperate with all services deemed necessary by the [c]ourt which will include but is not limited to the completion of the Sex Offenders Specific Evaluation as well as active participation in those treatment conditions." The trial court asked the State whether they wished to be heard on disposition, to which the State responded that they did not. The trial court then asked defense counsel: "And if I understand it correctly, you might have just stated that and I didn't hear you, but you are intending to give notice of appeal on this matter after disposition, correct?" Defense counsel responded affirmatively. Subsequently, the trial court adopted the recommendations of the court counselor, imposing a Level 1 disposition, and stated that the notice of appeal stayed the disposition.
Discussion
I. Jurisdiction and Writ of Certiorari
We first address whether this Court has jurisdiction to review the trial court's adjudication and disposition orders and, if not, whether to grant Drew's petition for writ of certiorari. In Drew's brief, he asserts that he gave proper oral notice of appeal at the disposition hearing. However, Drew's appellate counsel filed a petition for writ of certiorari "[o]ut of an abundance of caution."
Pursuant to N.C. Gen. Stat. § 7B-2602, a juvenile may seek appellate review from a final order by giving notice of appeal "in open court at the time of the hearing or in writing within 10 days after entry of the order." N.C. Gen. Stat. § 7B-2602 (2017). "In juvenile delinquency cases, appeal may only be taken from final orders, including an 'order of disposition after an adjudication that a juvenile is delinquent.' " In re A.J.M.-B. , 212 N.C. App. 586, 588, 713 S.E.2d 104, 107 (2011) (quoting N.C. Gen. Stat. § 7B-2602 ). "[A]n adjudication of delinquency is not a final order." In re Taylor , 57 N.C. App. 213, 214, 290 S.E.2d 797, 797 (1982) ; see also N.C. Gen. Stat. § 7B-2602.
"While N.C. Gen. Stat. § 7B-2602 permits oral notice of appeal at the hearing, the statute only provides for appellate review upon any 'final order.' " In re D.K.L. , 201 N.C. App. 443, 445, 689 S.E.2d 508, 510 (2009). "Thus, it 'appears that oral notice of appeal given at the time of the hearing must be from a final order.' " Id . (quoting In re Hawkins , 120 N.C. App. 585, 587, 463 S.E.2d 268, 270 (1995) ). In D.K.L. , "[a]t the beginning of the [dispositional] hearing, [the] juvenile's counsel informed the [trial] court that while he conceded the recommendations for disposition were reasonable, he objected to disposition, and [the] juvenile intended to appeal from the adjudication of delinquency." Id . at 444, 689 S.E.2d at 509. Additionally, "[a]t the conclusion of the hearing, [the] juvenile gave notice of appeal in open court." Id . Nevertheless, this Court held that the juvenile's notice of appeal was not a timely notice of appeal and dismissed the appeal where:
[T]he juvenile court had not rendered a final order at the time of the dispositional hearing because it had not ruled on all recommendations for disposition and did not address all matters included in the written order. At the hearing, the juvenile court only issued an order setting the conditions for [the] juvenile's release from detention. [The] [j]uvenile's counsel asked, "Judge, just so I can clarify, the payment of restitution, the placing him on probation, the referral to Eckerd Camp, obviously, those could not be imposed as conditions." The court responded, "Not at this point." The juvenile court's written order, filed on 26 November 2008, ordered juvenile to be placed in a wilderness program, to pay restitution, and to be placed on probation. [The] [j]uvenile filed no notice of appeal after the juvenile court's final written order.
Id . at 445, 689 S.E.2d at 510.
In the present case, the juvenile's counsel responded affirmatively to the trial court when asked if he would be giving a notice of appeal after disposition. The trial court then proceeded to render its disposition and state that the notice of appeal stayed the disposition. We conclude that this was not sufficient notice of appeal because the trial court had not rendered a final order when Drew's counsel stated his intent to give notice of appeal. See id .; Hawkins , 120 N.C. App. at 587, 463 S.E.2d at 270 ("[O]ral notice of appeal given at the time of the hearing must be from a final order.")
However, pursuant to Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure, "[a] writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R. App. P. 21(a)(1). " Rule 21(a)(1) provides this Court with the authority to review the merits of an appeal via writ even when the appeal is filed in an untimely manner." In re G.C. , 230 N.C. App. 511, 516, 750 S.E.2d 548, 552 (2013) (citing Anderson v. Hollifield , 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ). Accordingly, even though Drew failed to give a proper notice of appeal, we exercise our discretion to review the trial court's adjudication and disposition orders pursuant to Rule 21(a)(1) and grant Drew's petition for writ of certiorari.
II. Motion to Dismiss
On appeal, Drew argues that the trial court erred in denying his motion to dismiss the petition for crime against nature because the State did not present sufficient evidence of penetration. We agree.
We review de novo a trial court's denial of a juvenile's motion to dismiss. In re J.F. , 237 N.C. App. 218, 225, 766 S.E.2d 341, 347 (2014). "Where the juvenile moves to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, ... and (2) of [juvenile] being the perpetrator of such offense." In re Heil , 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quotation marks omitted). "The evidence must be such that, when it is viewed in the light most favorable to the State, it is sufficient to raise more than a suspicion or possibility of the [juvenile's] guilt." In re Walker , 83 N.C. App. 46, 48, 348 S.E.2d 823, 824 (1986).
"When the evidence raises no more than 'a suspicion or conjecture as to either the commission of the offense or the identity of the juvenile as the perpetrator of it, the motion should be allowed.' " Heil , 145 N.C. App. at 28, 550 S.E.2d at 819 (quoting State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) ). "The existence of only circumstantial evidence, however, does not warrant dismissal." Id . (citing State v. Barnes , 334 N.C. 67, 430 S.E.2d 914 (1993) ).
Where the evidence is circumstantial, the court must consider whether a reasonable inference of the juvenile's guilt may be drawn from the circumstances. When the trial court determines that an inference may be drawn, it is then within the court's fact-finding function to determine whether the facts, taken singly or in combination, satisfy the court beyond a reasonable doubt that the juvenile is delinquent.
Id. at 29, 550 S.E.2d at 819 (citations, quotation marks, and brackets omitted).
In the present case, the petition alleged that Drew was delinquent for violating N.C. Gen. Stat. § 14-177 (2017), which provides: "If any person shall commit the crime against nature, with mankind or beast, he shall be punished ...." "The offense of 'crime against nature is sexual intercourse contrary to the order of nature.' " In re R.N. , 206 N.C. App. 537, 540, 696 S.E.2d 898, 901 (2010) (quoting State v. Harward, 264 N.C. 746, 746, 142 S.E.2d 691, 692 (1965) ).
"[P]enetration is a required element of the offense of crime against nature. As our Supreme Court has held, an essential element of crime against nature is 'some penetration, however slight, of a natural orifice of the body.' " In re J.F. , 237 N.C. App. at 226, 766 S.E.2d at 347 (quoting State v. Whittemore , 255 N.C. 583, 585, 122 S.E.2d 396, 398 (1961) ) (emphasis omitted). "Proof of penetration of or by the sexual organ is essential to conviction." Whittemore , 255 N.C. at 585, 122 S.E.2d at 398. Nonetheless, "the crime against nature is not limited to penetration by the male sexual organ[,]" State v. Joyner , 295 N.C. 55, 66, 243 S.E.2d 367, 374 (1978), and "the offense is broad enough to include all forms of oral and anal sex." State v. Stiller , 162 N.C. App. 138, 140, 590 S.E.2d 305, 307 (2004).
In Whittemore , the defendant appealed from his conviction of committing a crime against nature, arguing that the trial court erred when it denied the defendant's motion to dismiss for insufficient evidence of penetration. The victim testified in pertinent part as follows:
[The defendant] then told me to pull off my pants ... I pulled my pants below my knees. After I pulled my panties down below my knees, he put his privates against mine. He was laying on his back and made me lay down on him. I stayed inside the house about two or three minutes before he told me to pull my panties down. After he went in the house, he pulled his trousers off of one leg and laid down flat on his back on the floor. He made me put my hands on his privates and he put his hand on my privates. He kept it there about two or three minutes; he just left it there. After he had done that for two or three minutes, he put his mouth on my breast and after that he put it on my privates and kept his mouth there about one or two minutes. He just left it there ... He had his privates at my privates rubbing it up and down. ... He did that about one or two minutes.
Whittemore, 255 N.C. at 586, 122 S.E.2d at 398. Our Supreme Court held that this "evidence [was] insufficient to establish the 'penetration' necessary for a conviction" pursuant to N.C. Gen. Stat. § 14-227 and that, accordingly, the defendant's motion to dismiss "should have been allowed." Id .
In In re R.N. , 206 N.C. App. 537, 696 S.E.2d 898 (2010), the juvenile was adjudicated delinquent for committing a crime against nature. The petition alleged that the juvenile "committed two distinct acts constituting a crime against nature: licking the alleged victim's genital area and placing his penis in her mouth." Id. at 538, 696 S.E.2d at 900. The juvenile appealed, contending that "the trial court should have dismissed the juvenile petition for insufficient evidence that penetration-the essential element of a crime against nature-occurred ...." Id. The relevant testimony at trial is summarized as follows:
Here, [the alleged victim] testified at trial that [the juvenile] "licked her private ...." In addition to [the alleged victim's] testimony, [her] mother testified that [the juvenile] "put his mouth on [the alleged victim's] private area," and [the alleged victim's] grandmother testified that [the juvenile] "touched [the alleged victim] on her private parts." Ms. Rolan, with the Child Advocacy Center, also testified about her interview with [the alleged victim], stating that [the alleged victim] told her that [the juvenile] "pulled down her pants and started licking her private area." Similarly, Ms. Tuttle, a CPS social worker, testified that [the alleged victim] told her during their interview that [the juvenile] had "licked her private."
Id . at 541-42, 696 S.E.2d at 902. This Court held that "the evidence tending to show that [the juvenile] 'licked' [the alleged victim's] 'private area' does not, without more, support a reasonable inference that penetration occurred." Id . at 542, 696 S.E.2d at 902 (citing Whittemore , 255 N.C. at 586, 122 S.E.2d at 398 ). In so holding, we reasoned that:
This testimony is indistinguishable from the evidence in Whittemore . Although the defendant in Whittemore placed his hand, his mouth, and his "privates" "on," "at," or "against" the alleged victim's "privates," thus establishing physical contact, there was no evidence indicating that [the] defendant penetrated the alleged victim's genitalia. So too, here, even when viewing the evidence in the light most favorable to the State, the evidence merely shows that [the juvenile] "licked [the alleged victim's] private"; that he "put his mouth on [the alleged victim's] private area"; or, that he "touched her on her private parts."
As our Supreme Court has held, cunnilingus, which is defined as the "stimulation by the tongue or lips of any part of a woman's genitalia," may occur without penetration of the female genitalia. State v. Ludlum , 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981). Thus, the evidence tending to show that [the juvenile] "licked" [the alleged victim's] "private area" does not, without more, support a reasonable inference that penetration occurred. Whittemore, 255 N.C. at 586, 122 S.E.2d at 398. The trial court, therefore, erred in denying [the juvenile's] motion to dismiss the charge of crime against nature based on the allegation that he "licked the [genital] area of the victim ...."
In re R.N. , 206 N.C. App. at 542, 696 S.E.2d at 898 (emphasis added).
The State argues that the present case is more analogous to our decision in In re Heil , in which we held that there was sufficient "evidence from which the trial court could find that 'some penetration' had occurred." Heil , 145 N.C. App. at 30, 550 S.E.2d at 820. We disagree.
In Heil , the victim's father testified that "when inquiring of [the victim] 'exactly what did you do' after [the] juvenile asked [the victim] to lick his penis, [the victim] 'just went over there and just licked [his mother's] thumb.' " Id . at 29, 550 S.E.2d at 820. We reasoned that the surrounding circumstances of the incident allowed the trial court to infer penetration, stating:
We recognize that the evidence of penetration is, at best, slight. However, in light of the relative size difference between a four-year old and an eleven-year old, and the fact that the incident occurred in the presumably close quarters of a closet, it was reasonable for the trial court to find based on [the victim's father's] testimony that there was some penetration, albeit slight, of juvenile's penis into [the victim's] mouth.
Id . at 29-30, 550 S.E.2d at 820.
In contrast, in In re J.F. , we reversed the juvenile's adjudications for crime against nature where "there was no direct evidence of penetration and insufficient evidence to infer penetration[.]" 237 N.C. App. at 227, 766 S.E.2d at 348. In that case, the alleged victim testified that he was alone with the juvenile "in the open loft area" of a home when the juvenile asked the alleged victim to "suck" the juvenile's penis. Id . at 226, 766 S.E.2d at 347. The alleged victim "differentiated between [the juvenile] asking him to 'suck' his penis, which he refused to do, and to 'lick' it, which he did." Id . Moreover, "[the alleged victim] explained that 'lick' meant to touch it with his tongue." Id . In reversing the adjudications, we distinguished the case from Heil , stating:
In re Heil is distinguishable in several ways. First, Heil relied on the close quarters in which the incident occurred in determining that an inference of penetration was reasonable. Here, both [the alleged victim's] mother and grandmother testified that the loft where the incident occurred was an open area with no door. More importantly, unlike the four-year-old in Heil , who was unable to testify, seven-year-old [alleged victim] testified to the details of the incident at the delinquency hearing. That testimony differentiated between acts involving penetration, which [the alleged victim] testified did not occur, and acts that merely involved licking or touching with the tongue.
In short, we do not believe the inference of penetration drawn in Heil appropriately can be drawn here. That inference conflicts with the victim's own direct testimony. Moreover, a key circumstantial factor relied upon in Heil to draw this inference-the small closet space where the incident occurred-is not present here.
Id . at 227, 766 S.E.2d at 348.
The present case is also distinguishable from Heil . The State insists that penetration can be inferred in the present case, arguing:
In this case, Michelle's demonstration of some of the acts [Drew] committed, i.e., how [Drew] pulled her pants down and "sticking her tongue out of her mouth and moving her head ... in an up and down motion" in combination with evidence that [Drew] "hurt" her when he licked and touched her with his finger; she was feeling pain in her vaginal area the next day; and her mother observed physical injury to her vaginal area is sufficient to infer penetration.
However, there is no evidence to support the State's assertion that Michelle was feeling pain in her vaginal area. The evidence does not provide any indication where on Michelle's genital area the scab was located. In addition, there is no evidence that the incident occurred in close quarters like the small closet space in Heil .
Here, Michelle testified at trial that Drew touched her genital area with his tongue and his fingers. Michelle's mother testified that Drew "told [Michelle] to pull her pants down and then he licked and he touched her vaginal, vagina area as well as her ... butt area." Ms. Ellis, with the Child Advocacy Center, also testified about her interview with Michelle, stating that Michelle told her that Drew "pulled down [Michelle's] pants" and "that [Drew] had licked ... what she identified as her Nukas which she later showed me on an anatomical drawing as being her genital area and she also pointed at her genital area during the interview." Ms. Ellis further testified that Michelle demonstrated Drew's actions by "sticking her tongue out of her mouth and moving her head ... in an up and down motion."
We find that the present case is more analogous to Whittemore , where there was evidence that the defendant removed the alleged victim's pants, touched her private area with his fingers and mouth and rubbed "his privates at [the alleged victim's] privates rubbing it up and down." Whittemore , 255 N.C. at 586, 122 S.E.2d at 398. Similarly, here, Michelle demonstrated that Drew licked her genital area in an up and down motion. As in Whittemore , this is not sufficient evidence from which the trial court could reasonably infer penetration. Accordingly, we must reverse the adjudication for crime against nature.
Because we reverse the crime against nature adjudication and Drew's adjudication for sexual battery was vacated on 5 June 2017 by Judge Jones on her own motion, it is not necessary to review the remaining issues on appeal.
Conclusion
For the reasons stated herein, the adjudication and disposition orders are
REVERSED.
Report per Rule 30(e).
Judges ELMORE and HUNTER, JR. concur.

Pseudonyms are used throughout this opinion to protect the minors' privacy and for ease of reading.