In the Matter of: Jonathan Heil

No. COA00-679

(Filed 17 July 2001)

### 1. Juveniles— delinquency—crime against nature—motion to dismiss

The trial court did not err by failing to dismiss a juvenile delinquency petition at the close of all evidence regarding the charge of crime against nature under N.C.G.S. § 14-177, because: (1) there was some evidence from which the trial court could find that some penetration occurred; (2) any inconsistencies in the testimony cannot be the basis for granting a motion to dismiss or for overruling a trial court's denial of said motion; and (3) resolving contradictions in the evidence falls within the province of the trial court when it performs as the fact-finder.

### 2. Juveniles— delinquency—condition of probation—restitution

The trial court erred by ordering a juvenile to pay restitution to the North Carolina Victim's Compensation Fund as a condition

---

of his probation based on his alleged delinquency for the charge of crime against nature, because: (1) the court made no inquiry or findings concerning whether ordering the juvenile to make restitution as a condition of his probation was in his best interest; (2) the amount of restitution ordered by the court reflected the exact amount quoted by the State in reference to the minor victim's therapy bills, indicating a concern to compensate the victim with no consideration for or adjustment based upon the juvenile's best interest and whether the juvenile, not his family, had the ability to pay restitution; (3) N.C.G.S. § 7A-649(2) requires restitution to be payable within a 12-month period, and the court ordered the period of restitution payments to perpetuate until the total is paid; and (4) there was a $200 discrepancy between the amount of the restitution award and the amount of the minor victim's therapy bills.

Appeal by juvenile from orders entered 11 January 1999 and 18 June 1998 by Judge Pattie S. Harrison in District Court, Caswell County. Heard in the Court of Appeals 25 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Amy C. Kunstling, for the State.*

*George B. Daniel, P.A., by John M. Thomas, for juvenile-appellant.*

TIMMONS-GOODSON, Judge.

Jonathan Heil ("juvenile") appeals from an order adjudicating him delinquent within the meaning of section 7A-517(12) of the North Carolina General Statutes[1] and a dispositional order placing him on probation and ordering him to make restitution. For the reasons herein stated, we affirm the adjudication of delinquency but reverse the trial court's dispositional order and remand for reconsideration of the restitution issue.

On 28 January 1998, a juvenile petition was filed alleging that juvenile was delinquent, in that he "commit[ted] the abominable and detestable crime against nature with [C.I.] in violation of [North Carolina General Statutes section] 14-177." The adjudication hearing

---

1. Section 7A-500, *et seq.*, the Juvenile Code applicable to the present case, was repealed by Session Laws 1998-202, s. 5, effective 1 July 1999. Chapter 7B, the Juvenile Code replacing section 7A-500, *et seq.*, became effective 1 July 1999 and applies to acts committed on or after that date.

was held on 8 and 18 June 1998, and the State's evidence showed that at the time of the incident alleged in the petition, juvenile was eleven years old and the victim, C.I., was four years old. Juvenile's and C.I.'s family socialized together at their church and in other settings. One night in October 1996, C.I. and his mother, Janet Isackson ("Mrs. Isackson"), visited the Heil's home. At some point during the visit, C.I. and juvenile went upstairs to play, but after approximately fifteen minutes, C.I. returned downstairs and informed his mother that he was ready to go home.

Mrs. Isackson later asked C.I. whether he had fun at the Heil's house, to which C.I. responded that he had not enjoyed the visit. C.I. informed his mother that juvenile had put him in a closet, shut the door, and touched his penis. Upon further inquiry, C.I. demonstrated how juvenile touched him by placing his hands on his penis.

The next day, C.I.'s father, Bradley Isackson ("Mr. Isackson"), questioned C.I. concerning the incident. Mr. Isackson testified as a rebuttal witness for the State. According to Mr. Isackson, C.I. informed his father and mother that while in a closet at the Heil's house, juvenile wanted C.I. to lick his penis. Mrs. Isackson then inquired, " '[C.I.] show me what [juvenile] wanted you to do,' " to which C.I. responded, " 'He wanted me to lick.' " Mrs. Isackson further inquired, " 'Exactly what did you do?' " According to his father's testimony, " '[C.I.] just went over there and just licked [Mrs. Isackson's] thumb and that was it. And then [C.I.] said, '[Juvenile] wanted me to do it again,' and he said, 'No, I don't want out [sic].' He said, 'I don't like that. I'm not going to do that.' "

In October 1997, C.I. informed Mrs. Isackson that on another occasion, juvenile had put his hands down C.I.'s pants underneath his underwear and touched his penis. The Isacksons reported this and the October 1996 incident to the Department of Social Services and later to the police.

Shortly thereafter, an investigator with the Caswell County Sheriff's Department, now Chief of the Yanceyville Police Department, Eric Taylor ("Chief Taylor"), interviewed juvenile and C.I. separately. During his interview with Chief Taylor, juvenile denied that the incidents ever occurred. However, C.I. told Chief Taylor that one day at the Heil's home, juvenile made him go into a closet, shut the door, and touched his penis. C.I. further mentioned that juvenile put his hands down his pants. However, according to Chief Taylor, "[C.I.] stated that [juvenile] did not put his mouth on him and—did

IN RE HEIL

[145 N.C. App. 24 (2001)]

not put his mouth on [C.I.] and that [C.I.] did not put his mouth on him in any way."

Dr. Mary Baker Sinclair ("Dr. Sinclair"), an expert in pediatric psychology, conducted interviews with C.I. and his parents concerning his alleged encounters with juvenile. Dr. Sinclair testified at trial that C.I. identified the penis on an anatomically correct drawing of a male, although her assessment otherwise indicated that C.I. had limited exposure to sexual content. Dr. Sinclair stated that despite some inconsistencies in his story, including the number of times he was fondled and where the fondling took place, C.I. consistently identified juvenile as the person who touched his penis. Dr. Sinclair explained that the "somewhat inconsistent" nature of C.I.'s accounts indicated to her that he was truthful and was not being coached into a "robotic" answer. C.I. did not testify at the adjudication proceeding.

Juvenile's evidence included testimony from his mother, Johnetta Heil ("Mrs. Heil"), and his sister that during C.I.'s fall 1996 visit to their home, C.I. and juvenile never went upstairs together. Mrs. Heil specifically testified that during that particular visit, she never saw any of her children or C.I. go upstairs. Mrs. Heil further testified that juvenile denied to her that the incident ever occurred and that she believed him. Juvenile's sister likewise testified that she did not believe that juvenile fondled the alleged victim. She further related an incident in which C.I., whom she described as "very rambunctious," pinched her breast. According to juvenile's sister, when she informed C.I.'s parents of the incident, Mrs. Isackson simply stated, " 'Well, you know, you're going to like it when you're older.' "

Also testifying on juvenile's behalf, his Boy Scout master stated that he had never received any reports of misconduct on the part of juvenile, nor had he personally witnessed any misconduct. Members of the church attended by both juvenile and C.I. generally described juvenile as being of good character and obedient, while they described C.I. as being "hungry for attention" and undisciplined. Juvenile, testifying on his own behalf, denied the allegations in the petition.

After the presentation of all the evidence, juvenile moved to dismiss the petition, arguing that there was insufficient evidence to support the allegations contained therein. The court denied the motion and upon hearing arguments from counsel, adjudicated juvenile delinquent. The dispositional portion of the proceedings was postponed for the completion of a sex offender evaluation of juvenile.

IN RE HEIL

[145 N.C. App. 24 (2001)]

Following the dispositional hearing, the trial court ordered juvenile committed to the Division of Youth Services for a period not to exceed his eighteenth birthday. The court suspended the aforementioned disposition in lieu of a one-year period of probation. As a condition of juvenile's probation, the court further ordered, *inter alia*, that he receive psychotherapy and that juvenile have no contact with the victim or any unsupervised contact with children younger than himself. The "Dispositional Order" also included the following provision: "[Juvenile] shall pay restitution in the sum of $1,305.00 . . . to be disbursed to [the North Carolina] Victims Compensation Fund. Monthly payments in the amount of $50.00 shall be made on or before the 3rd [of] each month beginning February 3, 1999 until the total is paid." Juvenile gave notice of appeal in open court.

---

**[1]** We first examine juvenile's argument that the trial court erred in failing to dismiss the petition at the close of all of the evidence, in that there was insufficient evidence to prove his guilt beyond a reasonable doubt as to each of the elements of a crime against nature.

"[A]ll rights afforded adult offenders" are bestowed upon juveniles in adjudication proceedings. N.C. Gen. Stat. § 7A-631 (1995) (repealed 1 July 1999). The juvenile is therefore "entitled to have the evidence evaluated by the same standards as apply in criminal proceedings against adults." *In re Dulaney*, 74 N.C. App. 587, 588, 328 S.E.2d 904, 906 (1985). Like adult defendants, juveniles "may challenge the sufficiency of the evidence by moving to dismiss the juvenile petition." *In re Davis*, 126 N.C. App. 64, 65-66, 483 S.E.2d 440, 441 (1997). Juvenile in the case *sub judice* satisfied the aforementioned requirement, and therefore, his argument concerning the sufficiency of the evidence is properly before this Court. *See* N.C.R. App. P. 10(b)(3) (2000).

Where the juvenile moves to dismiss, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, . . . and (2) of [juvenile's] being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). When the evidence raises no more than "a suspicion or conjecture as to either the commission of the offense or the identity of the [juvenile] as the perpetrator of it, the motion should be allowed." *Id.*

The existence of only circumstantial evidence, however, does not warrant dismissal. *State v. Barnes*, 334 N.C. 67, 430 S.E.2d 914 (1993).

**IN RE HEIL**

[145 N.C. App. 24 (2001)]

Where the evidence is circumstantial, "the court must consider whether a reasonable inference of [juvenile's] guilt may be drawn from the circumstances." *Id.* at 75, 430 S.E.2d at 919 (citation omitted). When the court determines that an inference may be drawn, it is then within the court's fact-finding function to determine "whether the facts, taken singly or in combination, satisfy [the court] beyond a reasonable doubt" that the juvenile is delinquent. *State v. Rowland,* 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965). "Both competent and incompetent evidence must be considered." *State v. Lyons,* 340 N.C. 646, 658, 459 S.E.2d 770, 776 (1995). Moreover, the court must disregard the juvenile's evidence, unless it supports or explains the State's case without contradicting it, or unless it is otherwise favorable to the State. *State v. Fritsch,* 351 N.C. 373, 379, 526 S.E.2d 451, 455, *cert. denied,* 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

In reviewing a challenge to the sufficiency of evidence, it is not our duty to weigh the evidence, but to determine whether there was substantial evidence to support the adjudication, viewing the evidence in the light most favorable to the State, and giving it the benefit of all reasonable inferences. *Id.* at 378-79, 526 S.E.2d at 455.

The petition in the present case alleged that juvenile was delinquent for violating North Carolina General Statutes section 14-177, which provides: "If any person shall commit the crime against nature, with mankind or beast, he shall be punished . . . ." N. C. Gen. Stat. § 14-177 (1999). The essential element of the so-called "crime against nature, with mankind" is "some penetration, *however slight,* of a natural orifice of the body." *State v. Whittemore,* 255 N.C. 583, 585, 122 S.E.2d 396, 398 (1961) (emphasis added); *State v. Joyner,* 295 N.C. 55, 243 S.E.2d 367 (1978). Our Supreme Court has previously stated that "penetration need not be to any particular distance." *Whittemore,* 255 N.C. at 585, 122 S.E.2d at 398.

C.I.'s father, Mr. Isackson, testified that when inquiring of C.I. "[e]xactly what did you do" after juvenile asked C.I. to lick his penis, C.I. "just went over there and just licked [Mrs. Isackson's] thumb." On appeal, juvenile contends that even if the aforementioned testimony were taken as true, it was insufficient to support a finding that penetration occurred. We disagree.

We recognize that the evidence of penetration is, at best, slight. However, in light of the relative size difference between a four-year

IN RE HEIL

[145 N.C. App. 24 (2001)]

old and an eleven-year old, and the fact that the incident occurred in the presumably close quarters of a closet, it was reasonable for the trial court to find based on Mr. Isackson's testimony that there was some penetration, albeit slight, of juvenile's penis into C.I.'s mouth. We therefore find the evidence sufficient to support juvenile's adjudication, as there was evidence from which the trial court could find that "some penetration" had occurred. *Whittemore*, 255 N.C. at 585, 122 S.E.2d at 398.

Juvenile further contends that the evidence does not support his adjudication because Mr. Isackson's testimony, the only evidence allegedly demonstrating penetration, was hearsay, was uncorroborated, and was even contradicted. Juvenile points to the testimony of C.I.'s mother, Mrs. Isackson, Chief Taylor, and Dr. Sinclair, none of whom testified that C.I. ever mentioned the incident described by Mr. Isackson. Juvenile specifically references Chief Taylor's testimony, in which he stated that C.I. expressly informed him that juvenile never put his mouth on C.I. and that C.I. never put his mouth on juvenile. With this argument, we also disagree.

First, in his appellate brief, juvenile expressly withdraws his assignment of error concerning the admission of Mr. Isackson's testimony and further does not present any support for his contention that it was hearsay or inadmissible. We therefore presume that juvenile has abandoned any argument he may present against the admissibility of that testimony and its effect on his adjudication. *See* N.C.R. App. P. 28(b)(5) (2000). Second, concerning the inconsistencies in the testimony, as noted *supra*, inconsistencies and discrepancies cannot be the basis for granting a motion to dismiss or for overruling a trial court's denial of said motion. *Barnes*, 334 N.C. 67, 430 S.E.2d 914. Resolving contradictions and inconsistences in the evidence falls within the province of the trial court when performing as the fact finder, and thus, it is not our place to now weigh the evidence on appeal. *See Fritsch*, 351 N.C. 373, 526 S.E.2d 451. As we find the evidence sufficient to support the adjudication of delinquency, juvenile's first argument is overruled.

[2] By his second argument, juvenile contends that the trial court erred in ordering restitution payable to the North Carolina Victim's Compensation Fund. Juvenile argues that no evidence was introduced at the adjudication or dispositional proceedings indicating the amount of restitution due the victim or his family. Juvenile further argues that the Victim's Compensation Fund was not entitled to

receive restitution, as it suffered no loss based upon his alleged delinquency. Because juvenile did not object to the award of restitution based upon the particular grounds he raises on appeal, he has not preserved the aforementioned argument for appellate review. *See* N.C.R. App. P. 10(b)(1).

Juvenile's failure to preserve his arguments for review notwithstanding, the State has brought to our attention errors in the juvenile court's disposition, which we believe necessitate remanding the case for entry of a modified dispositional order. The State notes that given the statutory provisions and relevant case law governing restitution in juvenile dispositions, the trial court erred in failing to consider or make findings concerning juvenile's best interest and in considering his parents' ability to pay. We must agree.

Section 7A-649 of our General Statutes authorized the juvenile court to order a delinquent juvenile to "make specified financial restitution" as a condition of his probation. N.C. Gen. Stat. § 7A-649(8)(e) (1995) (repealed 1 July 1999). This Court has consistently "endors[ed] the discriminate and prudent use of restitution in juvenile cases" but has cautioned that "compensation of victims should *never* become the only or paramount concern in the administration of juvenile justice." *In re Register*, 84 N.C. App. 336, 339, 352 S.E.2d 889, 891 (1987) (emphasis added); *see also* N.C. Gen. Stat. § 7A-646 (1995) (repealed 1 July 1999) ("The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction.") As such, requiring "that a juvenile make restitution as a condition of probation *must* be supported by the record and appropriate findings of fact which demonstrate that the best interest of the juvenile will be promoted by the enforcement of the condition." *In re Berry*, 33 N.C. App. 356, 360, 235 S.E.2d 278, 280-81 (1977); *In re Schrimpsher*, 143 N.C. App. 461, 546 S.E.2d 407 (2001). *See also In re McKoy*, 138 N.C. App. 143, 530 S.E.2d 334 (2000).

Furthermore, the juvenile court "shall not require the juvenile to make restitution if the juvenile satisfies the court that he does not have, and could not reasonably acquire, the means to make restitution." N.C. Gen. Stat. § 7A-649(2). Section 7A-649(2) emphasizes that the focus of the restitution award should be the ability of the juvenile, not his parents, to pay restitution. *See McKoy*, 138 N.C. App. at 148, 530 S.E.2d at 336. Thus, the statute "does not authorize the juvenile court to consider the parents' ability to pay restitution when or-

dering the juvenile to make restitution to the victim as a condition of [his] probation." *Id.*

At the dispositional proceeding in the present case, the juvenile court made no inquiry or findings concerning whether ordering juvenile to make restitution as a condition of his probation was in his best interest. Immediately upon being informed by the State that C.I.'s therapy bills totaled $1,305.00, the court stated, *"They* will have to pay restitution . . . ," presumably referring to juvenile's family. (Emphasis added). Juvenile's mother, Mrs. Heil, informed the court that she could afford to pay only "five dollars now," at which time the court informed her, *"You're* going to have to do some extra work or something." (Emphasis added). The court did acknowledge that juvenile "himself [could] clean yards or something" and that "really it should be his bill, not his parents." However, the court went on to state that it "expect[ed] the parents to help[.]"

This excerpt from the dispositional proceeding reveals that the court's paramount concern was indeed the ability of juvenile's family to pay restitution, not juvenile's best interest. Likewise, the amount of restitution ordered by the court reflected the exact amount quoted by the State in reference to C.I.'s therapy bills, indicating a concern to compensate the victim with no consideration for or adjustment based upon juvenile's best interest or his ability to pay. Accordingly, we conclude that the court erred in failing to consider or make findings concerning whether the restitution award was in juvenile's best interest and whether juvenile, not his family, had the ability to pay restitution.

The State likewise points out other blatant errors in the court's dispositional order which require our consideration. First, by ordering that the period of restitution payments perpetuate "until the total is paid," the court also violated section 7A-649(2), which requires that restitution must be "payable within a 12-month period." N.C. Gen. Stat. § 7A-649(2). Also, there was an unexplained $200.00 discrepancy between the amount of the restitution award, $1,305.00, and the amount of C.I.'s therapy bills, as reflected in a "Determination of Director Award," filed by the commission who administers the Victim's Compensation Fund.

Despite juvenile's failure to challenge the errors raised by the State and preserve them for appellate review, we suspend the Rules of Appellate Procedure, *see* N.C.R. App. P. 2, and vacate that portion of the 11 January 1999 dispositional order making restitution a con-

SWEATT v. WONG

[145 N.C. App. 33 (2001)]

dition of juvenile's probation. We remand the present case to the juvenile court to structure a modified dispositional order reflecting a re-examination of the restitution amount and payment schedule consistent with this opinion. In so doing, we specifically instruct the court to (1) consider and make findings concerning whether restitution is in juvenile's best interest; (2) examine whether juvenile had or could reasonably acquire the means to pay restitution; and (3) if the court finds that a restitution payment schedule is in juvenile's best interest, restrict the schedule to a period of twelve months or less and re-examine the restitution amount in light of the above noted $200.00 discrepancy. We further affirm the 18 June 1998 adjudication order and 11 January 1999 dispositional order in all other respects.

Affirmed in part, vacated and remanded in part.

Judges WYNN and HUDSON concur.