An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1051

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

In the matter of:

A.A.P.

                              Onslow County
                              No. 10JB109

Appeal by juvenile from orders entered 26 April 2013 by Judge Sarah C. Seaton in Onslow County District Court. Heard in the Court of Appeals 5 February 2014.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Stephanie A. Brennan, for the State.*
>
> *Mary McCullers Reece, for the juvenile.*

DILLON, Judge.

The juvenile ("Adam")[1] appeals from a Level 2 disposition order entered 26 April 2013 adjudicating him delinquent. The basis of the disposition was two counts of sexual battery, and the disposition included fourteen days intermittent confinement and nine months of probation. We affirm.

---

[1] A pseudonym.

The evidence of record tends to show that Adam, who was fourteen years old and in seventh grade, rode the school bus with Tucker,[2] a thirteen-year-old eighth grader, and Tom, a ten-year old.

Tucker described Adam as someone whom he knew from riding the bus, and whom he would only see "just down the hallway" at school. Tucker never saw Adam outside of school. Tucker testified that Adam grabbed his penis outside his clothes with his hand on a number of occasions. Tucker provided a written statement: "A guy I sit by on the bus keeps touching me and grabbing me in my private parts and has caused me to switch seats while the bus was moving or fall out of my seat. I appreciate it if you did not write [him] up and please do not tell him it was me." Three or four other students saw the foregoing happen.

Another thirteen-year-old eighth grader, named Ben, testified that he saw Adam go behind Tom, who was Ben's brother, and pretend to "rape him from behind" on multiple occasions. Specifically, Ben said Adam was "mimicking the movements of inserting his parts into [Tom]'s behind." According to Ben, Adam said, "Oh look I'm raping him." Ben also affirmed that

---

[2]    Pseudonyms are used throughout this opinion.

Adam "reached his arm around" his brother, Tom, and "grabbed [him] on the chest[,]" and Ben described the touching as "rubbing." Ben said he had never seen Adam and Tom talking before the incidents, and when asked whether they were friends, Ben said, "they're sort of neutral[.]" Ben provided the following written statement:

> When me and my brother, [Tom], get on the bu[s] in the afternoon, there's this kid named [Adam] who yesterday said that he was molesting [Tom] and touching his nipples. This happened once before except he was pretending to have jabbing [(sic)] his wiener into [Tom's] butt. He has also spanked [another kid] but many kids have seen it but some will laugh at the actions. I'm very concerned about these actions because [Tom] is young and these kind of things [(sic)] can haunt someone for the rest of their life.

Testimony also showed that Adam "was making sexual sounds" during this incident.

The assistant principal testified that Tucker told her "he was being touched inappropriately by [Adam] on the bus." When the assistant principal asked Tucker why Adam touched him, Tucker said, "you know, messing around, just cutting up." In addition to the foregoing incidents, the assistant principal also testified to other incidents, one in which Adam "pants another student[,]" meaning that he "pull[ed] their . . . gym

shorts down[,]" and another called the "ball bagging game" that involved "hitting, . . . grabbing, pulling . . . the male genitals of another person." When specifically asked whether she thought this behavior was horseplay, the assistant principal replied, "I think it was probably intended that way, but it was not perceived or received that way."

Adam described his behavior as "just a game that other boys do[,] . . . a game called nut check[,]" where "we both hit each other inside the nut part[,]" and that "it wasn't nothing like towards for pleasure or anything it was just something we did, sir." Adam also said, "I never grabbed his penis, I mean, I hit him but I never grabbed his penis."

At the close of the State's evidence and at the close of all evidence, Adam's counsel moved to dismiss the charges, arguing that there was a lack of substantial evidence that Adam acted with a sexual purpose. The trial court denied Adam's motion, stating the following:

> I think Mr. Taylor asked the appropriate questions when he asked uhm, Ms. Hardin, 'how do you think [Adam] perceived this versus how the boys perceived it' and you may have been messing around but you don't grab anybody's penis that's not a close friend of yours on your basketball team for that matter. I can understand how getting in a locker room with the buddies that's on your basketball team, uhm, you can do that kind of thing and that

> seems to be a big joke, but you don't do it
> to people that you're not close to. Uh, and
> the allegations in this case are you
> obviously did it to two individuals that you
> were not close to. Uh, that's the basis for
> the Court's decision. . . .

The trial court entered a Level 2 disposition adjudicating Adam delinquent, from which Adam appeals, challenging the trial court's denial of his motion to dismiss.

## I: Motion to Dismiss

In Adam's sole argument on appeal, he contends the trial court erred by denying his motion to dismiss the charges of sexual battery because there was insufficient evidence of a sexual purpose. We disagree.

"We review a . . . court's denial of a [juvenile's] motion to dismiss *de novo*." *In re S.M.S.*, 196 N.C. App. 170, 171, 675 S.E.2d 44, 45 (2009) (citation omitted). "Where the juvenile moves to dismiss, the . . . court must determine whether there is substantial evidence (1) of each essential element of the offense charged, . . . and (2) of [the juvenile's] being the perpetrator of such offense." *In re Heil*, 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (citation and quotation marks omitted). "The evidence must be such that, when it is viewed in the light most favorable to the State, it is sufficient to raise more than a suspicion or possibility of the respondent's guilt."

*In re Walker*, 83 N.C. App. 46, 48, 348 S.E.2d 823, 824 (1986).

A juvenile can be found delinquent of sexual battery if, "for the purpose of sexual arousal, sexual gratification, or sexual abuse, [the juvenile] engages in sexual contact with another person . . . [b]y force and against the will of the other person[.]" N.C. Gen. Stat. § 14-27.5A (2011). Adam argues that, in this case, there is not sufficient evidence to support a finding of sexual purpose.

On the question of sexual purpose, this Court has held "that such a purpose does not exist without some evidence of the child's maturity, intent, experience, or other factor indicating his purpose in acting[.]" *In re K.C.*, ___ N.C. App. ___, ___, 742 S.E.2d 239, 242-43, *disc. review denied*, __ N.C. __, 747 S.E.2d 530 (2013) (citation and quotation marks omitted). "Otherwise, sexual ambitions must not be assigned to a child's actions." *Id.*

> The element of purpose may not be inferred solely from the act itself. Rather, factors like age disparity, control by the juvenile, the location and secretive nature of the juvenile's actions, and the attitude of the juvenile should be taken into account. The mere act of touching is not enough to show purpose.

*Id.* (citations and quotation marks omitted).

In this case, the evidence shows that Adam's conduct was

repeated; he used sexual language, such as saying that he was "raping" Tom, while "rubbing" Tom's chest, making sexual noises, and simulating a sexual act; he also said to Tucker, "you know you like it like that[;]" and he showed a pattern of inappropriately touching other boys. Adam argues that there is insufficient evidence of sexual purpose because the evidence shows that Adam's actions were merely horseplay. We believe, however, when the evidence is viewed in the light most favorable to the State, it could be inferred from the evidence that Adam acted for the purpose of sexual arousal or sexual abuse. Accordingly, we believe the evidence was sufficient to withstand Adam's motion to dismiss.

AFFIRMED.

Judge BRYANT and Judge STEPHENS concur

Report per Rule 30(e).