McCULLOUGH, Judge.
Juveniles Andy[1] and Troy appeal from orders adjudicating them delinquent based on a determination that they had committed the offense of larceny from the person in violation of N.C. Gen.Stat. § 14-72(b)(1). Based on the reasons stated herein, we affirm in part and vacate and remand in part.
I. Background
On 16 April 2014, juvenile petitions were entered against two brothers-Troy and Andy (collectively "juveniles"). The petitions alleged that they were delinquent in that they had committed common law robbery in violation of N.C. Gen.Stat. § 14-87.1. The petitions alleged that juveniles "did steal, take, and carry away another's personal property, a skateboard, from the person and presence of [Cedric] by means of putting him in fear of bodily harm by the threat of violence. This is in violation of NCGS 14-87.1."
Juveniles' matters were joined and heard together during the 29 July 2014 term of Martin County District Court, the Honorable Christopher B. McClendon presiding. The State's evidence tended to show that after 5:00 p.m. on 14 April 2014, Cedric, a schoolmate of both Troy and Andy, was on a bike trail with his skateboard in his hand. Cedric saw juveniles walking. Andy approached Cedric and "snatched" Cedric's skateboard out of his hand. Andy "took off up on it. He was riding it down the bike trail." Once Andy reached the end of the bike trail, he threw the skateboard into a ravine. Troy went down into the ravine, picked up the skateboard, returned to the bike trail, and threw the skateboard again into the ravine. Andy and Troy then "took off" running. After a few minutes, Cedric went down to the ravine and unsuccessfully searched for his skateboard. Thereafter, Cedric called his mother who called the police. When police arrived on the scene, they were unable to recover the skateboard. However, by the time of the hearing, police had returned the skateboard to Cedric. Cedric testified that the skateboard had been damaged and that "[t]here was white paint on the grip tape and [the] bearings were rusted." Cedric could have fixed the bearings on the skateboard and testified that it would cost "anywhere from $7 to $50" to buy another set. Instead, Cedric bought a new skateboard.
Juveniles' witness, Rick, a fifteen year-old, testified that on the afternoon of 14 April 2014, he was standing in his aunt's backyard. A fight between Troy and another boy was occurring. There were a total of six people in the yard at that time, including Cedric. Cedric was recording the fight on his phone and did not have a skateboard in his hands while recording. After the fight was over, Cedric stated aloud, "where my skateboard at." At that point, Andy pushed Cedric's skateboard to Cedric and told him "to come get it." Rick's aunt told Cedric to come get his skateboard. Cedric replied, "no, I'm just going to call my mama" and said he was going to delete the video. Andy kicked the skateboard up to Cedric and the skateboard rolled down to the bike trail close to a ditch. Andy, Troy, and the other kids then left the scene.
Rick's aunt, Janie Myrick, testified that her back yard adjoined the walking trail. On 14 April 2014, she heard something, looked out her door, and saw Troy and another boy fighting. She told the kids in her yard that they needed to go home. Cedric asked for his skateboard. Andy had Cedric's skateboard and "told him to come get it." Cedric refused and said he was "going to call my mama." Ms. Myrick told Cedric twice "go get your skateboard" and Cedric "act[ed] like he didn't want to go get his skateboard and he called his mama." Ms. Myrick witnessed Andy push the skateboard with his foot and then saw Andy and Troy leave. The skateboard was outside of her yard, in a grassy area. Afterwards, Cedric's mother came to Ms. Myrick's home with the police.
On 29 July 2014, the trial court entered adjudication orders, finding juveniles delinquent of larceny from the person in violation of N.C. Gen.Stat. § 14-72(b)(1). Following a disposition hearing held 29 July 2014, juveniles received a level 2 disposition and were placed on probation for twelve months. Juveniles were also ordered to pay restitution in the amount of $70.00, jointly and severally. On 7 August 2014, juveniles filed notice of appeal.
II. Discussion
Juveniles present three issues on appeal. First, juveniles argue that (A) they received ineffective assistance of counsel because their attorney was under an actual conflict of interest. Juveniles also argue that (B) they received ineffective assistance of counsel when their attorney failed to make a motion to dismiss at the close of the evidence. Lastly, juveniles argue that (C) the trial court erred by finding that juveniles owed $70.00, jointly and severally, in restitution.
A. Ineffective Assistance of Counsel: Conflict of Interest
Juveniles argue that they received ineffective assistance of counsel ("IAC") when their trial counsel was under an actual conflict of interest that adversely affected his performance. We disagree.
In our determination of whether juveniles' right to effective, conflict-free assistance of counsel has been violated, this Court conducts a de novoreview. State v. Taylor,155 N.C.App. 251, 260, 574 S.E.2d 58, 65 (2002). Under de novoreview, our Court "considers the matter anew and freely substitutes its own judgment for that of the trial court." Reese v. Mecklenburg Cnty .,200 N.C.App. 491, 497, 685 S.E.2d 34, 38 (2009) (citation omitted).
"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." State v. Stroud,147 N.C.App. 549, 553, 557 S .E.2d 544, 547 (2001). However, "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required[.]" State v. Fair,354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001). Because the cold record before us is sufficient to properly rule on juveniles' IAC claims, we will review the merits of their claims.
A juvenile "has a constitutional right to effective assistance of counsel. The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest." State v. Bruton,344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996) (citations and quotation marks omitted). "[T]o establish a conflict of interest violation of the constitutional right to effective assistance of counsel, a [juvenile] who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." State v. Howard,56 N.C.App. 41, 46, 286 S.E.2d 853, 857 (1982) (citation and quotation marks omitted). "Permitting a single attorney to represent two or more codefendants in the same trial is not a per seviolation of the right to effective assistance of counsel. Accordingly, the mere possibility of conflict inherent in counsel's joint representation of [juveniles] is not sufficient to impugn" juveniles' adjudications. Bruton,344 N.C. at 391, 474 S.E.2d at 343 (citations omitted).
On appeal, Troy asserts that "it should have been intuitively obvious to Judge McLendon that the potential for conflicts of interest would exist where one attorney represented two juveniles in a contested delinquency case." Troy argues that the trial court judge should have conducted an inquiry and that because there is no record evidence that he waived any potential conflicts of interest, a reversal is warranted. Lastly, Troy argues that his counsel was under an actual conflict of interest because he and Andy had different, conflicting defenses.
It is well established that "[w]hen a conflict is identified, [t]he standard for the validity of a sixth amendment waiver [by a defendant] is that it be voluntarily, knowingly, and intelligently made." State v. Choudhry,365 N.C. 215, 223, 717 S.E.2d 348, 354 (2011) (citation and quotation marks omitted). However, "[u]nless the circumstances indicate otherwise, the state trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." State v. Wise,64 N.C.App. 108, 112, 306 S.E.2d 569, 572 (1983) (citation and quotation marks omitted). In the present case, neither juvenile raised an objection to their counsel's joint representation. Therefore, the trial court was not on notice that the joint representation created a potential conflict of interest and was not required to initiate an inquiry or to act. Choudhry,365 N.C. at 220, 717 S.E.2d at 352 (stating that the "court is not required to act if it is aware only of a 'vague unspecified possibility of conflict' ") (citation omitted). Accordingly, we reject Troy's arguments that "it should have been intuitively obvious" that a potential conflict of interest existed, that the trial court erred by failing to initiate an inquiry, and that a reversal is warranted based on lack of evidence of a waiver.
We also reject Troy's argument that their counsel performed under an actual conflict of interest because he and Andy had conflicting defenses. "Only when a conflict actually affect[s] the adequacy of his representationwill the defendant be allowed relief without having to establish prejudice." State v. Phillips,365 N.C. 103, 120, 711 S.E.2d 122, 136 (2011) (citations and quotation marks omitted) (emphasis in original). Here, neither Troy nor Andy testified at their adjudication hearing. Thus, juveniles' counsel was not in a position where one client's testimony was to the benefit or detriment to the other client. Moreover, it is evident from the transcript that juveniles' counsel vigorously argued Troy's defense before the trial court judge which can in no way be deemed ineffective. Juveniles' counsel argued several times that there was "no evidence at all about [Troy,]" a point that Troy concedes in his brief. Therefore, we hold that Troy has failed to demonstrate that his counsel performed under an actual conflict of interest that adversely affected his performance.
Next, we address Andy's specific argument on appeal. Andy argues that acting under a conflict of interest, his counsel was unable to argue that there was no evidence that Andy's actions had the "intent to permanently deprive the owner of the property," an essential element of larceny from the person in violation of N.C. Gen.Stat. § 14-72(b)(1). Andy contends that because the State's evidence demonstrated that the skateboard was located and retrieved by Troy after Andy threw it into the ravine, Andy did not have the requisite intent to permanently deprive Cedric of the skateboard.
It is well established that to find juveniles delinquent of larceny from the person, it must be shown that juveniles (1) took the property of another, (2) from their person, (3) carried it away, (4) without the owner's consent, and (5) with the intent to deprive the owner of the property permanently. N.C. Gen.Stat. § 14-72(b)(1) (2013) ; State v. Reeves,62 N.C.App. 219, 223, 302 S.E.2d 658, 660 (1983). "[T]he intent to permanently deprive an owner of [his] property could be inferred where there was no evidence that the defendant ever intended to return the property, but instead showed a complete lack of concern as to whether the owner ever recovered the property." In re D.K.,200 N.C.App. 785, 787, 684 S.E.2d 522, 524 (2009) (citation omitted). Here, the State's evidence indicated that Andy grabbed Cedric's skateboard, rode off on it down the bike trail, and threw Cedric's skateboard into a ravine at the end of the bike trail. Thereafter, Andy left the scene. This evidence sufficiently demonstrates that Andy had a complete lack of concern and total indifference as to whether Cedric ever recovered his skateboard. Andy's intent to permanently deprive Cedric of his skateboard was not negated by the evidence that Troy was able to locate the skateboard in the ravine. In conclusion, we hold that Andy's argument is predicated on a misinterpretation of the law and, accordingly, we find his argument unconvincing. The record does not show that an actual conflict of interest adversely affected juveniles' counsel's performance.
B. Ineffective Assistance of Counsel: Motion to Dismiss
In the second issue on appeal, juveniles argue that they received ineffective assistance of counsel when their counsel failed to make a motion to dismiss at the conclusion of the evidence. Juveniles argue that there was insufficient evidence that they had the intent to permanently deprive Cedric of his skateboard.
As a preliminary matter, we must address whether this issue was preserved for appellate review.
[J]uveniles may challenge the sufficiency of the evidence by moving to dismiss the juvenile petition. However, if a defendant [or juvenile] fails to move to dismiss the action ... at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged.
In re Hartsock,158 N.C.App. 287, 291, 580 S.E.2d 395, 398 (2003) (citations and quotation marks omitted). Here, juveniles failed to move to dismiss the juvenile petitions for insufficient evidence at the close of the State's evidence. However, at the conclusion of all the evidence, juveniles' counsel argued that there was insufficient evidence to support the charged offense of common law robbery based on the failure to establish that juveniles placed Cedric in fear. Based on our holding in In re S.M.,190 N.C.App. 579, 660 S.E.2d 653 (2008) (where the respondent's counsel failed to make a motion to dismiss at the close of all the evidence but vigorously argued that the evidence was insufficient to support the charged offense, the respondent's argument was preserved for appellate review), we also hold that juveniles' arguments are preserved for appeal.
In order to prevail, juveniles must show that (1) their counsel's performance fell "below an objective standard of reasonableness[,]" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Waring,364 N.C. 443, 502, 701 S.E.2d 615, 652 (2010) (citation and quotation marks omitted).
"Where the juvenile moves to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, ... and (2) of [juvenile's] being the perpetrator of such offense." State v. Heil,145 N.C.App. 24, 28, 550 S.E.2d 815, 819 (2001) (citation and quotation marks omitted). The trial court must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences. Id.at 29, 550 S.E.2d at 819.
There must be substantial evidence that juveniles (1) took the property of another, (2) from their person, (3) carried it away, (4) without the owner's consent, and (5) with the intent to deprive the owner of the property permanently. N.C. Gen.Stat. § 14-72(b)(1) ; Reeves,62 N.C.App. at 223, 302 S.E.2d at 660. Troy and Andy both argue that there was insufficient evidence to support element (5). Troy argues that because he threw Cedric's skateboard into the ravine while in Cedric's presence and because it was found after he threw it into the ravine and police returned the skateboard to Cedric sometime later, there was insufficient evidence to establish that Troy intended to permanently deprive Cedric of his skateboard. Similarly, Andy argues that because Troy was able to locate Cedric's skateboard after Andy threw it into the ravine, he also lacked the intent to permanently deprive Cedric of his skateboard.
As previously discussed, the intent to permanently deprive an owner of his property can be inferred "where there was no evidence that the defendant ever intended to return the property, but instead showed a complete lack of concern as to whether the owner ever recovered the property." In re D.K.,200 N.C.App. at 787, 684 S.E.2d at 524 (citation omitted). Viewing the evidence in the light most favorable to the State, we hold that the evidence was sufficient to withstand a motion to dismiss. There was no evidence that either Troy or Andy intended to return the skateboard to Cedric. Instead, juveniles threw Cedric's skateboard into the ravine and thereafter fled the scene. Juveniles showed a complete lack of concern as to whether Cedric ever recovered his skateboard. Therefore, even assuming arguendothat juveniles' counsel erred by failing to make a motion to dismiss at the close of all the evidence, juveniles have failed to establish that but for their counsel's error, the result of their proceeding would have been different. As such, juveniles' IAC claim is without merit.
C. Restitution Award
In their last argument on appeal, juveniles contend that the trial court abused its discretion in ordering that the juveniles be jointly and severally liable for restitution in the amount of $70.00.
The trial court may
[r]equire restitution, full or partial, up to five hundred dollars ($500.00), payable within a 12-month period to any person who has suffered loss or damage as a result of the offense committed by the juvenile. The court may determine the amount, terms, and conditions of the restitution. If the juvenile participated with another person or persons, all participants should be jointly and severally responsible for the payment of restitution[.]
N.C. Gen.Stat. § 7B-2506(4) (2013). "However, the court does not have absolute discretion when ordering a juvenile to pay restitution." In re Schrimpsher,143 N.C.App. 461, 464, 546 S.E.2d 407, 410 (2001). "[R]equiring that a juvenile make restitution as a condition of probation mustbe supported by the record and appropriate findings of fact which demonstrate that the best interest of the juvenile will be promoted by the enforcement of the condition." Heil,145 N.C.App. at 31, 550 S.E.2d at 821 (citations and quotation marks omitted).
In the present case, we note that there is a discrepancy between the amount of restitution stated by the trial court judge at the disposition hearing and the amount written in the disposition orders. Both of juveniles' disposition orders ordered restitution "in the amount of ... $35.00, into the office of the Clerk of Superior Court ... to be paid jointly and sever[ally] through the Friends of Families Juvenile Restitution/Community Service Program." At their disposition hearing, the trial court judge stated as follows:
THE COURT: Joint and several liability for an amount of $70. Joint and sever [al] liability in the amount of $70 through the friends and family program. That'll be $35 a piece. But anyway, it's joint and several liability in the sum of $70.
Nevertheless, juveniles contend, and the State concedes, that there is no evidence in the record to support the trial court's order, requiring juveniles to pay $70.00 in restitution, jointly and severally. Here, Cedric testified that he purchased a new skateboard but did not provide the amount. Cedric testified that the police returned his old skateboard to him but that it was damaged. There was "white paint on the grip tape" and his "bearings were rusted." Cedric stated that were he to fix the bearings on the old skateboard, it would cost "anywhere from $7 to $50" to replace the set. The trial court also failed to make any findings of fact demonstrating that the best interest of juveniles would be promoted by requiring them to pay restitution. Accordingly, we vacate the trial court's restitution order and remand for a rehearing on this issue.
III. Conclusion
We vacate and remand the portion of the trial court's order, requiring juveniles to pay $70.00 in restitution and remand for a rehearing on the issue. With respect to all other matters considered by this Court on appeal, the trial court's orders are affirmed.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
Judges CALABRIA and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by juveniles from orders entered 29 July 2014 by Judge Christopher B. McLendon in Martin County District Court. Heard in the Court of Appeals 17 February 2015.

Pseudonyms have been used throughout the opinion to protect the identity of the juveniles and for ease of reading.